UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                   :
ELAINE W. BERTRAM, et al.,            :       CASE NO. 1:07-cv-02460
                                                   :
                Plaintiffs,                      :
                                                   :
        vs.                                       :       OPINION & ORDER
                                                   :       [Resolving Docs. No. 39, 44.[1/]]
MEDINA COUNTY, et. al.,                :
                                                   :
                Defendants.                    :
                                                   :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Before this Court is a motion for summary judgment filed by the Defendants.  [Doc. 39, 50.]

The Plaintiffs oppose the motion.  [Doc. 46.]  For the following reasons, the Court **GRANTS** the

Defendants' motion for summary judgment.

## I. Background

         Plaintiff Elaine Bertram ("Bertram") alleges that the Defendants violated federal and state

law in their treatment of her during and after her employment with the Medina County Sheriff's

Office ("Medina Sheriff's Office").  [Doc. 22.]

        Bertram began working at the Sheriff's Office on February 11, 2002 as a personnel assistant.

[Doc. 41-5 at 12.][2/]  She had no discipline problems in this position, and her performance reviews

show that she met or exceeded her job requirements while in this role.  [Doc. 41-5 at 12, 82-85.]

        On September 15, 2005, Bertram requested a transfer from her position as personnel assistant

_____

        [1/] The Court considered the Defendants' motion to strike in its analysis here.  Only that evidence that the Court
deemed appropriate is considered in this order.

        [2/] The Court notes that the Plaintiffs resubmitted their exhibits in Doc. 46; however, because the substance of
the exhibits did not change, the Court hyperlinks to the Plaintiffs' exhibits found in Doc. 41.

Case No. 1:07-cv-02460
Gwin, J.

to that of corrections officer.  [Doc. 41-12.]  On September 19, 2005, Sheriff Hassinger denied the

request.  *Id.*  He testifies that he thought Bertram was not "ready for" a position in corrections[3/], that

he was concerned with finding a replacement for her current job, and that he thought another

corrections officer position would open up for Bertram in the future.  [Doc. 41-5 at 16-21.]

In June 2006, the Sheriff, "reluctantly" according to Bertram, granted Bertram's second

request for a transfer to a corrections officer position.  On June 18, 2006, Bertram's pay rate changed

to that of a corrections officer.  [Docs. 41-13, 41-30.]  However, Bertram delayed her transfer to

allow her to train her replacement; thus, she did not officially begin working as a corrections officer

until August 7, 2006.  [Docs. 41-5 at 29, 41-30.]

Under the collective bargaining agreement ("CBA") with the union, Bertram began her new

position as a probationary employee.  [Doc. 41-6.]  While on probation, the Medina Sheriff's Office

gave her monthly performance evaluations.  [Docs. 41-14, 41-15.]  Bertram says that other similarly

situated male employees did not receive monthly evaluations.  [Doc. 46-1 at 6.]

The Plaintiff began employment as a corrections officer working the overnight third shift.

Over time, Bertram says she felt increasingly uncomfortable because of the sexually explicit

discussions, comments, and gestures of her co-workers and supervisors as well as the sexually

explicit content of some of the television broadcasting in her work environment.  [Doc. 41-9 at 41-

76.]  Bertram's general response to this sexually explicit content was to leave the room.  She says

that her refusal to participate in these conversations resulted in her supervisors picking on her.  The

---

[3/] Bertram views this reference to her not being "ready" as sexist because she says the Sheriff has never told a male that he was not ready for a corrections position; however, Bertram provides no evidence to substantiate this claim. Bertram never asked the Sheriff in his deposition whether he has felt any male officers have not been ready for a corrections officer position.

Case No. 1:07-cv-02460
Gwin, J.

Court will more specifically discuss and address Bertram's allegations in its discussion below.

On December 22, 2006, Bertram says she brought complaints about this conduct to the attention of the Sheriff through a letter followed up with a meeting and then a meeting with Lieutenant Baker.  [Doc. 41-11 at 63, 66, 41-17, 41-18.]  Lieutenant Baker admits this.  Bertram alleges that "there was no real investigation of these initial complaints."  [Doc. 46-1 at 9.]  Instead, Bertram reports increasing retaliation following her initial complaint and Lieutenant Baker's alleged initial investigation.  [Docs. 41-9 at 81-97.]  Bertram then complained about the alleged retaliation and again says that Lieutenant Baker and the Medina Sheriff's Office failed to adequately investigate her complaint of retaliation.  [Doc. 46-1 at 13.] Lieutenant Baker testifies that he investigated Bertram's complaints by speaking with the officers involved in each incident and asking them to cease use of the offensive behavior.  [Doc. 39-5 at 3-4.]

In January 2007, Bertram requested a transfer to a court security position.  The Sheriff granted her request.  [Doc. 41-5 at 120-121.]  However, Bertram then decided not to take the position.

On January 9, 2007, following the alleged increasing retaliation, Bertram began to take Family and Medical Leave Act ("FMLA") leave for work-related stress and back surgery.  [Docs. 41-21, 41-30.] The Sheriff's Office asked for sick leave day donations for her.  [Doc. 41-5 at 151.] When she returned to work after the surgery, she performed modified work assignments.  She says that she had wanted to be placed in reception for her modified work; however, the Sheriff and Lieutenant Baker say she was placed at central control because it required less physical exertion.[4]

---

[4] At reception, the officer must bend upon scanning and searching incoming individuals for weapons and be prepared for occasional physical issues to occur.  [Doc. 41-5 at 128.]

Case No. 1:07-cv-02460
Gwin, J.

[Doc. 39-5 at 4, 41-5 at 127-28.]  The Plaintiff says that other individuals with physical limitations performed modified work assignments at reception.

On April 16, 2007, Bertram requested a transfer to the Communications Division.  [Doc. 41-25.]  Bertram says the Medina Sheriff's Office never responded to her request.

On August 14, 2007, the Plaintiffs filed this law suit.  [Doc. 1.]

On September 19, 2007, the Medina Sheriff's Office terminated Bertram from her position as a corrections officer, saying she failed to attend the state-required training within her first year as a corrections officer.  [Doc. 41-4.]  This training is mandated under Chapter 109-2-9 of the Administrative Code. [Doc. 41-8.]  On January 23, 2008, the Sheriff terminated her Peace Officer Training Commission with the Medina Sheriff's Office as a Reserve Deputy for the similar reason of failing to fulfill the applicable training requirement.  [Doc. 41-5 at 45-55.]  As the Court discusses below, Bertram argues that the state was willing to provide her extensions to fulfill both training requirements.  [Doc. 41-8, 41-26, 41-40.]

In response to the Defendants' contention that they could terminate her without appeal rights because she was still on probation, Bertram says that despite her requests, the Medina Sheriff's Office would not tell her when her probation period ended and that actually, her probation period was calculated incorrectly and she should not have been on probation when terminated.  [Doc. 46-1 at 17-18.]  The Plaintiffs also draw attention to the Defendants' alleged failure to adequately respond to her union grievances, including one following her termination.  [Docs. 46-1 at 18, 41-6, 41-7, 41-20.]

Finally, the Court notes that Plaintiff Jeffrey Bertram is Elaine Bertram's husband.  As described below, he provides additional testimony in support of his wife's claims as well as his own

Case No. 1:07-cv-02460
Gwin, J.

claim for loss of consortium. [Doc. 41-22.]

## II.  Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit." *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986).  It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 585-86.  Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings. FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat'l Enters., Inc. v. Smith,* 114 F.3d

Case No. 1:07-cv-02460
Gwin, J.

561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III.  Discussion

With their first amended complaint, the Plaintiffs raise the following claims: (1) sex discrimination, (2) sexual harassment, (3) hostile work environment, (4) intentional infliction of emotional distress, (5) breach of contract, (6) retaliation, (7) wrongful termination, (8) defamation, (9) invasion of privacy, (10) Family Medical Leave Act violations, (11) punitive damages, and (12) loss of consortium.  [Doc. 22-1.]  The Defendants seek summary judgment in their favor on all claims.  [Doc. 39.]  The Court will address the federal claims first and then the state claims.

### A. Sex Discrimination Claim Under Federal and Ohio Law[5/]

A plaintiff can establish a prima facie disparate treatment case for sex discrimination under Title VII by introducing direct evidence of discrimination or by using the *McDonnell Douglas* paradigm to infer discrimination from circumstantial evidence.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802  (1973).  *See also Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348-49 (6th

---

[5/] In Count 1, the Plaintiff only references state law; however, in the introduction to her complaint, she also lists Title VII as legal authority. [Doc. 22.]  Therefore, the Court will consider this claim under both state and federal law.

Case No. 1:07-cv-02460
Gwin, J.

Cir. 1997). Because Plaintiff Bertram does not provide direct evidence of discrimination, the Court applies the *McDonnell Douglas* framework.  Specifically, the plaintiff bears the initial burden of establishing that she: (1) is a member of a protected group, (2) was subject to an adverse employment action, (3) was qualified for the position, and (4) was replaced by someone outside the protected class or was treated less favorably than similarly situated, non-protected employees. *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992)).

Once the plaintiff establishes a prima facie case, a presumption arises that the defendant unlawfully discriminated against the plaintiff.  The burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions. *Texas Dep't. of Comm. Affairs v. Burdine,* 450 U.S. 248, 254-56 (1981). If the defendant articulates a legitimate nondiscriminatory reason, then the burden shifts back to the plaintiff to prove the stated reasons are pretexts for discrimination. *McDonnell Douglas,* 411 U.S. at 804-5.  The ultimate burden of persuasion at all times rests with the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993).

Bertram has also brought a gender discrimination claim under Ohio Revised Code Chapter 4112.  Federal case law interpreting Title VII applies in determining whether employment practices are discriminatory under Ohio Rev. Code Chapter 4112.  *See Hollowell v. Soc'y Bank & Trust,* 605 N.E.2d 954, 958 (Ohio App. 6 Dist. 1992).  Thus, the Court will analyze Plaintiff Bertram's sex discrimination claims under both federal and state law together.

First, the Court determines whether Bertram meets her initial burden under the *McDonnell Douglas* framework.  The Plaintiff references the following adverse employment action allegations: in order of severity, termination of her employment and her commission, the initial denial of her

-7-

Case No. 1:07-cv-02460
Gwin, J.

request to transfer to the Communications Division, the initial denial of her request to transfer into a corrections officer position, the requirement that she submit monthly performance reviews during her first year as a corrections officer, the limitation on her modified work assignments during her medical recovery that prevented her from working at reception as well as the requirement to submit modified work assignment requests every thirty days, and the heavier work load associated with her rotations as a female officer.  [Doc. 46-1 at 20-21.]  The Court finds that the Plaintiff fails to meet her burden with regard to the fourth element of the *McDonnell Douglas* framework- that she was treated less favorably than similarly situated, non-protected employees.

A similarly situated employee is one who has the same supervisor, was subject to the same standards of conduct, and engaged in "nearly identical" conduct without differentiating or mitigating circumstances that would distinguish his or her conduct or the employer's response.  *Mallory v. Noble Corr. Inst.*, 45 Fed. Appx. 463, 471-72 (6th Cir. 2002); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).  When the above factors do not appear appropriate, courts do not need to consider them; rather, in those instances, courts may "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the [proposed comparable] employee."  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (quotation omitted).  The Sixth Circuit has instructed that courts "should not demand exact correlation, but should instead seek relevant similarity."  *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

For most of Plaintiff Bertram's claims, she fails to point to any evidence to create a genuine issue of material fact that the Defendants treated male employees who were similarly situated to

-8-

Case No. 1:07-cv-02460
Gwin, J.

Bertram more favorably than her.[6]  With regard to the termination of Plaintiff's employment and her commission for her alleged failure to obtain the required training in a timely manner, she presents no evidence that any similarly situated male employee was treated differently.  With regard to the initial denial of Bertram's request to transfer to the corrections officer position, again the Plaintiff provides no comparative evidence of similarly situated male employees who were granted such a request.[7]

As to the limitations placed on Bertram's modified work assignments as well as the requirement that she submit modified work assignment requests every thirty days, the Plaintiff also fails to provide sufficient evidence that similarly situated men were treated differently than her.[8]  Similarly, with regard to the Plaintiff's argument that men and women experienced different rotation assignments, again the Plaintiff fails to cite to any evidence showing that in fact similarly situated men were treated differently than her with regard to rotation assignments besides her own vague and

---

[6] Because of the Court's frustration with the Plaintiff's failure to accompany many of her legal arguments with specific citations to pages in the record, at the outset, the Court notes that it is not its duty to read the record to find facts supporting the Plaintiff's position.  *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in" the record.). *See also Street v. J.C. Branford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

[7] The Court notes that the Plaintiff does not reference the two former arguments in the sex discrimination portion of the brief.

[8] The Plaintiff's counsel briefly references Rodney Hilton's different modified work assignment based on a knee injury in the deposition with the Sheriff.  [Doc. 41-5 at 130.]  In the Plaintiff's deposition, Bertram also names a fellow co-worker who allegedly told her that he did not have to submit formal modified work assignment requests every thirty days.  [Doc. 41-10 at 94-95.]  Not only is the latter statement hearsay and therefore cannot be considered for the purposes of summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999) ("Hearsay evidence may not be considered on summary judgment."), but the Plaintiff fails to provide any additional evidence on these points.  Thus, the Court cannot evaluate to what extent the Plaintiff and these other male co-workers were similarly situated and treated differently.
    The Court further notes that Bertram admits that the Medina Sheriff's Office's policy required employees to submit modified work assignments every thirty days and that the Sheriff approved each of her requests for modified work assignments (with the exception of her placement at central control rather than reception).  [Doc. 41-10 at 46-47, 95.; 50-2 at 3, 11.]

Case No. 1:07-cv-02460
Gwin, J.

unsubstantiated testimony.  [Doc. 41-9 at 118-122, 41-10 at 67-68, 97-98, 41-20 at 1.]

The Plaintiff also alleges that she had to submit monthly performance reviews while on probation during her first year as a corrections officer while similarly situated males did not.  The Plaintiff provides two comparators, but the Court does not find that they are similarly situated to Bertram.  The Plaintiff first points to Lieutenant Baker and the lack of performance reviews in his file; however, Bertram provides no evidence to refute Lieutenant Baker's statement that he is not similarly situated because "[l]ieutenants don't have a probationary period."  [Doc. 41-11 at 221-22.] The Plaintiff also identifies Ryan Hatton as a comparator: "During his probationary period, one of his reviews ranged from May 1, 2002 through December 31, 2002," as opposed to the monthly reviews as was allegedly the case for Bertram.  [Docs. 41-2 at 7; 41-16, 41-44.]  First, the time period in question here, 2006-2007, is five years later than that involving Hatton, 2001-2002.[2] Second, the record suggests that Hatton's probation began in July 2001, and therefore, he was at the end of his year-long probation and then off probation for the time period addressed in the performance review.  [Doc. 41-44.]  Third, Hatton's supervisors appear to be different than Bertram's.  [Doc. 41-16.]  Finally, it appears that some of Bertram's performance evaluations also covered periods longer than one month; for example, one covered the time period of December 16, 2006 to March 31, 2007.  [Doc. 41-5 at 93.]  Thus, Plaintiff Bertram does not meet her burden here.

Finally, regarding the Sheriff's initial denial of Bertram's request to transfer to the Communications Division, again the Plaintiff presents no comparative evidence beyond that the

---

[2] Deputy Chief Kenneth Baca also states in his affidavit, "At that time [meaning, the time that Hatton was on probation], monthly performance reviews for newly hired C.O.'s was not required." [Doc. 50-2 at 3.]

Case No. 1:07-cv-02460
Gwin, J.

Medina Sheriff's Office hired a male from outside for the position.[10/]  With no factual support as to what extent Bertram and this male are similarly situated, the Court hesitates to find that Bertram has met her prima facie burden with regard to this claim.  *See White v. Columbus Metro. Housing Auth., 429 F.3d 232, 240-41 (6th Cir. 2005)* (in a substantially analogous context, "it is insufficient for a plaintiff in a failure to promote sex discrimination case merely to point to a man who received the job in satisfying the fourth prong.")  Even assuming Bertram did establish a prima facie case with this showing alone, *see Talley,* 61 F.3d at 1248, the Defendant offers a legitimate nondiscriminatory reason for his denial of the Plaintiff's request: Bertram's application came in after "[a]nother person was already being processed for the job."  [Doc. 41-5 at 56-60.]  Upon the burden shifting back to Bertram, the Court finds that she fails to provide a genuine issue of material fact that this reason was pretextual, especially given that following the resignation of the male hired, the Sheriff offered the job to Bertram.[11/]  [Doc. 41-5 at 60.]

Because the Plaintiff fails to meet her burden under the *McDonnell Douglas* paradigm, the Court grants the Defendants' motion for summary judgment on this claim.

## B.  Sexual Harassment Claims Under Federal and Ohio Law [12/]

---

[10/] Bertram, in part, explains this lack of evidence as due to an "outstanding discovery" request. [Doc. 41-2 at 17, fn. 7.] However, the Plaintiff failed to bring this discovery problem to the attention of the Court through the various avenues possible through the federal rules of civil procedure; therefore, the Court will not forgive this absence of evidence.

[11/] The Court finds the Plaintiff's suggestion that the failure of the Medina Sheriff's Office to hire an internal employee when it is customary to do so insufficient to establish that the Medina Sheriff's Office's reason is pretextual. The Sixth Circuit recently stated, "[A]n employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext."  *White,* 429 F.3d at 246.

[12/] Again, the Court will consider the Plaintiff's sexual harassment allegations under both state and federal law, applying the same federal law standards to both claims.  *See Deters v. Rock-Tenn Co., Inc.,* 245 Fed.Appx. 516, 522 (6th Cir. 2007) ("[T]he district court correctly recognized that sexual harassment claims under Ohio Revised Code § 4112 are generally governed by the same standards as sexual harassment claims under Title VII.")

Case No. 1:07-cv-02460
Gwin, J.

Title VII of the federal civil rights statute states: "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).  To succeed on a sexual harassment claim, the plaintiff needs to show either quid pro quo sexual harassment or hostile work environment sexual harassment.

The Court first finds that the Plaintiff does not state a claim for quid pro quo sexual harassment.  *See Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 185–86 (6th Cir. 1992) (to succeed, a plaintiff must show that she was subject to "unwelcome[] sexual harassment in the form of sexual advances or requests for sexual favors" and her "submission to the unwelcome[] advances was an express or implied condition for receiving job benefits or that [her] refusal to submit to her supervisor's sexual demands resulted in a tangible job detriment").  In her deposition, Bertram testified that each Defendant had not made sexual advances towards her.[13] [Doc. 39-3 at 59-61.]

The Court also finds that Bertram's allegations do not rise to the level of hostile work environment sexual harassment.  In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), the Supreme Court found that a hostile work environment occurs when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

---

[13] The Plaintiff does mention unwanted sexual advances from Captain Bacca and another co-worker named Mike; however, they are not defendants in this case, and the Plaintiff does not allege any employer liability based on these co-workers' comments.  [Doc. 39-3 at 59.]

The Plaintiff also mentions some sexual comments by Lieutenant Baker, but says, "I think that the comments made to me by Lieutenant Baker were not to me intentionally, but I could take them as that.  He was just talking in general, and that's the way Lieutenant Baker just does.  He just talks off the cuff.  So I really can't say it was towards me personally.  I just had found some things that he said inappropriate." [Doc. 39-3 at 60.] The comments Bertram found inappropriate included those when Lt. Baker called her pretty and discussed how much he liked sex. *Id.*

Even if Lt. Baker's comments are considered sexual advances, the Plaintiff presents no evidence that her submission to these advances was an express or implied condition of her job or that her refusal to submit to the advances resulted in a tangible job detriment.

-12-

Case No. 1:07-cv-02460
Gwin, J.

the conditions of the victim's employment." *Harris*, 510 U.S. at 21 (internal citation and quotation marks omitted).  Evidence that the conduct at issue was so severe or pervasive as to create a hostile work environment "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

To establish a hostile work environment claim, a plaintiff must establish that (1) she is a member of a protected class, (2) she was subjected to unwanted harassment, (3) the harassment was based on her sex, (4) the harassment unreasonably interfered with her work performance, creating a hostile work environment, and (5) the employer is liable.  *See Clay v. UPS, Inc.,* 501 F.3d 695, 706 (6th Cir. 2007).  In consideration of the totality of the circumstances, a rational fact finder must be able to find both that a reasonable person would find the environment objectively hostile and that the plaintiff subjectively found the conduct severe or pervasive.  *Williams v. Gen. Motors Corp.,* 187 F.3d 553, 562-63, 564 (6th Cir. 1999).  Offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the "terms and conditions of employment." *Hafford v. Seidner*, 183 F.3d 506, 512-13 (6th Cir.1999).

The Court begins by considering Bertram's allegations of the Defendants' language and actions before she filed her first complaint with the Sheriff in December 2006.[14]  First, Bertram reports her supervisors' and co-workers' use of sexual and vulgar language and gestures in her presence.  [Doc. 41-9 at 54-59.]  She specifically mentions Sergeant Pope's discussion of sex toy

---

[14] The Court reviews the facts that the Plaintiff draws attention to in her brief because it is the Plaintiff's duty to set forth sufficient evidence to establish a genuine issue of material fact at the summary judgment stage, not the Court's or the Defendants'.  While the Defendants mention additional possible factual allegations in their briefs, the Court does not find these allegations sufficient to meet the sexual harassment standards articulated here and therefore, in the interest of space, does not consider each possible allegation, ignored by the Plaintiff, in the analysis here.

Case No. 1:07-cv-02460
Gwin, J.

shopping, and a co-worker's (who is not a defendant) blowing up of a latex glove in the shape of male genitalia.  [Doc. 41-5 at 71, 41-9 at 46-49, 41-17.]  She further reports the near-constant "Girls Gone Wild" ads playing on the television in the background during the overnight third shift; however, she states that the one time she turned it off, she suffered no consequences.  [Doc. 41-9 at 41-46.]  Two former female employees (who are both in the process of suing the Medina Sheriff's Office as well) also testify to the "sexual comments and explicit language" and the frequent "talk about sex, sexual escapades and use [of] vulgar language."  [Doc. 41-3, 41-35.]

Second, Bertram alleges that because she refused to participate in these activities and discussions, her supervisors and co-workers would pick on her.  [Docs. 41-9 at 67- 76, 41-18.] She says that her supervisors became "angry" and "demeaning," "critical over minor issues," and accused her of not being a "team player."[15/]  [Docs. 41-9 at 67- 76.]  She specifically mentions her supervisor's, Lieutenant Lesak's, failure to follow-up on her report of a co-worker's use of an inmate's spoon to stir feces in a cell's toilet and then leaving the spoon in the cell for the inmate for future use.  [Doc. 41-9 at 49-53,   41-5 at 97-99,   41-18 at 5-6.]

The Court next turns to the allegedly retaliatory harassment Bertram faced following her first complaint in December 2006.  First, the Plaintiff draws attention to her supervisors' criticism of her. For example, on one occasion Bertram says that one supervisor, Sergeant Pope, told her not to clean a room, and later the other supervisor, Sergeant Kiousis, became upset with her for failing to clean the room.  [Doc. 41-9 at 82-85.]  She notes that her supervisors, Sergeant Kiousis and Sergeant Pope, remained her supervisors despite their role in the alleged harassment.  She also says that some

---

[15/] Although not mentioned in Bertram's brief, she also described an occasion in her deposition in which Sgt. Kiousis ordered her to pat down a female inmate in the groin area six or seven times.  [Doc. 39-3 at 76.]

Case No. 1:07-cv-02460
Gwin, J.

of her supervisors avoided her.  Second, the Plaintiff says that other co-workers, male and female, would ignore her, hang up on her, slam doors near her, refuse to answer her questions, and move away from her when she approached; Bertram does not provide much additional detail in terms of frequency and substance.[16/]  [Doc. 41-5 at 114-116, 41-9 at 89-97; Doc. 41-36.]  She specifically mentions an incident where a co-worker yelled "fuck you" at her.  [Doc. 41-9 at 81.]  She also cites to one occasion in which a female co-worker sent a hostile e-mail out to the workforce about her. [Doc. 41-24.]

Plaintiff Jeffrey Bertram also complains that Defendants treatment of him was meant to harass his wife.  In February 2007, he conducted a clergy visit to the Medina Jail when he was suddenly escorted out and told not to return under the orders of Lieutenant Baker.  [Doc. 41-22 at 29, 56-63; Doc. 41-41.]  Mr. Bertram and the Sheriff spoke that evening, and the Sheriff told him that he had been escorted out because the inmate did not want a clergy visit.  When Mr. Bertram told the Sheriff that was a lie, the Sheriff said that he could return the next day; however, Mr. Bertram was limited in where he could conduct the visits going forward.  [Doc. 41-22 at 62-66.]

The strongest fact Bertram alleges is an incident in which Sergeant Kiousis and Pope sent her to the hospital upon feeling sick at work when she apparently said she preferred to just go home, an allegedly humiliating and costly experience for her.  [Doc. 41-9 at 85-88, 41-22 at 50-55.] However, Bertram admits, "I felt very sick.  I felt really dizzy, nauseous, I began to sweat, and felt

---

[16/] The Court notes that the Plaintiff admitted that even before Lieutenant Baker's investigation began, she was having difficulty getting along with co-workers: "I'm in a situation where...you know...it's difficult when coworkers don't want to work with you."  [Doc. 41-18 at 3.]

Case No. 1:07-cv-02460
Gwin, J.

very warm, I also experienced tingling in my fingers and my knees were very weak."[17/]  [Doc. 41-19.]  Sergeant Kiousis and Sergeant Pope said they advised she go to the hospital because her symptoms caused them concern and to avoid liability (although despite Sergeant Pope's EMT training, they did not take her vitals).  [Doc. 39-6 at 4, 41-9 at 85-87, 41-23.]  Bertram says that she requested to go home, but that she did not refuse to go to the hospital when her supervisors told her they preferred she do so for liability purposes.  [Doc. 41-9 at 85-87, 50-2 at 19.]  Bertram says that others have been relieved from duty upon sickness without going to the hospital; however, she presents no such evidence to support this assertion nor evidence (hospital records for example) to suggest she should not have been sent to the hospital.[18/]

Even construing these facts in the light most favorable to the Plaintiff, the Court cannot find that, taken together, these allegations are sufficiently severe or pervasive as to deem her work environment hostile under *Harris*.  Moreover, the Court finds that with regard to most of the allegations described above (and all those following the December 2006 initial complaint), the Plaintiff herself explains the allegations as tied to her complaints, not to her sex.  *See Williams*, 187 F.3d at 565 (To establish that the harm was "based on her sex," the plaintiff "must show that but for the fact of her sex, she would not have been the object of harassment") (citation omitted); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790-91 (6th Cir. 2000) (declining to consider alleged

---

[17/] In her brief, the Plaintiff draws attention to the Defendants' different descriptions of her symptoms; however, the Court notes that the Plaintiff herself also presents different versions of her symptoms.  The language quoted in the text above comes from Bertram's notes she wrote to herself two days following the incident.  [Doc. 41-19] This language indicating serious symptoms renders her later reports of milder symptoms weak.  [Doc. 41-9 at 85-87, 41-22 at 55.]

[18/] The Bertram's also say that they felt uncomfortable that she was accompanied to the hospital by a fellow female co-worker and that Lieutenant Baker, per Medina Sheriff's Office policy, came in to ask what had occurred.  [Docs. 41-22 at 52-54, 39-5 at 3.]  Bertram also draws attention to her supervisors' alleged failure to follow Medina Sheriff's Office protocol by failing to fill out an Accident, Injury & Illness Report following the incident, suggesting that the supervisors did not send her to the hospital out of a concern for following protocol.  [Doc. 41-5 at 154.]

Case No. 1:07-cv-02460
Gwin, J.

retaliatory conduct as part of hostile work environment claim because the alleged conduct was not "because of sex").  Thus, the Court finds that the Plaintiff's sexual harassment hostile work environment claim fails.

### C.  Retaliation Claim Under Federal and Ohio Law [19]

Title VII prohibits retaliatory actions against employees who oppose, report or participate in investigations involving conduct that allegedly violates Title VII.  *See* 42 U.S.C. § 2000e-3(a). Because the Plaintiff relies on circumstantial evidence, the *McDonnell-Douglas* paradigm applies. To establish a prima facie case, a plaintiff must show that (1) she engaged in a protected activity, (2) the employer knew about the protected activity, (3) the employer discriminated against the employee in a materially adverse way,[20] and (4) there was a causal connection between the protected activity and the employer's action.  *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004).  As above, if the plaintiff meets her burden, then the burden shifts to the defendant to show a legitimate and nondiscriminatory reason for the employer's action.  If the defendant meets its burden, then the burden returns to the plaintiff to "demonstrate that the proffered reason was not the true reason for the employment decision."  *Lindsay v. Pizza Hut of Am.*, 57 Fed. Appx. 648, 650 (6th Cir. 2003).

---

[19] Again, the Court will consider the Plaintiff's retaliation allegations under both state and federal law, applying the same federal law standards to both claims.  *See Deters*, 245 Fed.Appx. at 527.

[20] *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (expanding the scope of this element to include discriminatory actions that are not necessarily employment-related but are materially adverse to the employee). The Sixth Circuit also permits a showing of a retaliatory hostile work environment to satisfy this element.  *See Diamond v. U.S. Postal Service*, 29 Fed.Appx. 207, 212-13 (6th Cir. 2002) (describing the third element as "thereafter, the defendant took an employment action adverse to the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor").  As described above and below, the Court does not find the Plaintiff's allegations of the conditions she faced sufficiently severe or pervasive to meet the objective prong of the *Harris* standard.

Case No. 1:07-cv-02460
Gwin, J.

The Supreme Court has recently noted that Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White,* 126 S. Ct. 2405, 2414-15 (2006) (internal citations omitted).  Despite this more liberal standard, this anti-retaliation provision does not protect against "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 2415.

The Court has already summarized many of the Plaintiff's allegations of retaliation above. The Court finds that the Plaintiff does not provide sufficient evidence to show that her allegations of hostility from her co-workers and supervisors, the trip to the hospital, and her husband's escort out of the jail are materially adverse actions in and of themselves.  *See James v. Metro. Gov't of Nashville,* 243 Fed.Appx. 74, 79 (6th Cir. 2007) (holding that the plaintiff's "allegations are not actionable because they failed to significantly impact her professional advancement and would not have dissuaded a reasonable person from filing a Title VII claim").  As described above, these allegations also fail to create a genuine issue of material fact as to a retaliatory hostile work environment claim under *Harris* because they lack the requisite severity or pervasiveness.  *See Willey v. Slater,* 20 Fed. Appx. 404, 406 (6th Cir. 2001) (holding that an employee could not make out objective severe or pervasive harassment by simply alleging supervisor and co-worker hostility); *Akers v. Alvey,* 338 F.3d 491, 499 (6th Cir. 2003) (finding that increased ignoring and criticism of plaintiff was not sufficiently severe or pervasive).

The Court does though find that three of the Plaintiff's allegations warrant closer

Case No. 1:07-cv-02460
Gwin, J.

examination.  All three involve decisions made by the Sheriff: 1) the Sheriff's alleged failure to

respond to Bertram's request to transfer to the Communications Division; 2) the Sheriff's decision

to terminate Bertram for her failure to complete the state-mandated training; and 3) the Sheriff's

decision to terminate Bertram's peace officer commission with the Medina Sheriff's Office again

for her failure to complete the required training.

The Plaintiff meets the first three elements of her prima facie case.  First, her complaint to

the Sheriff via letter in December 2006, her complaint to Lieutenant Baker in January 2007

following the hospital incident, and the filing of this lawsuit in August 2007 are all protected

activities.  Second, construing the facts in the light most favorable to the Plaintiff, a reasonable juror

could also find that the Sheriff knew about each of these complaints.  Third, the Court finds that

these actions are material adversities satisfying the third element.

Next, the Court examines the fourth element with regard to each of the Sheriff's actions.  To

show a causal connection, a plaintiff usually must show a temporal connection coupled with other

indicia of retaliatory conduct.[21/]  *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th

Cir.2001).  The Plaintiff clearly provides enough evidence to meet the temporal requirement; all of

the alleged retaliation occurred within months of her complaints.

The Court assumes that the Plaintiff satisfies the prima facie causation requirement as to the

termination of her employment.  The Sheriff states that the reason he terminated her and her

commission was her failure to meet state-mandated training requirements.  Bertram presents

opposing evidence in the form of communication with the relevant state authorities that indicated

---

[21/] In some Sixth Circuit cases, courts have allowed temporal proximity standing alone to permit an inference
of retaliation to satisfy the prima facie case.  *See DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004).

Case No. 1:07-cv-02460
Gwin, J.

she could receive extensions on her training requirements.  First, the Plaintiff provides an e-mail

from Joel Commins that said:

> The Sheriff . . . would have to write the Bureau Administrator and reference all/any
> extenuating circumstances as to the reason why the individual wasn't scheduled to
> attend the 136 OPOTA class within the first year . . . . [T]he Bureau would issue
> some type of acceptance of a "plan of action" for the individual to attend the OPOTA
> sanctioned school as soon as possible in the near future.  But the Sheriff's reason
> must be valid and in my eyes this would definitely be a reasonable excuse.

[Doc. 41-26.]  Second, Bertram offers a letter from Gregory Dann, the State Jail Inspector from the

Bureau of Adult Detention, who approved the Plaintiff's request for an extension as follows:

> The Bureau will approve of a ninety-day extension for this officer to begin the Basic
> Corrections Officer Academy. . . .  Officer Elaine Bertram was transferred to the
> Corrections Division on August 7, 2006 and should have completed training prior
> to August 7, 2007.  The ninety-day extension will commence from the anniversary
> date of August 7, 2007.  Officer Bertram must start this mandated training by
> November 7, 2007 or the county risks being non-compliant with the Ohio Minimum
> Jail Standards and/or possible jail decertification.

[Doc. 41-8.]  Similarly, with regard to the required training for the commission, the Plaintiff presents

a letter from Tomi Dorris, the Executive Director of the Ohio Peace Officer Training Commission,

that provides:

> To facilitate your compliance efforts, I am offering a one time, 90-day extension for
> calendar year 2007 only, to those officers who have not completed their update
> training requirement(s).

[Doc. 41-40.]  The Court assumes that these correspondences provide enough evidence to survive

the prima facie stage.

In contrast, the Plaintiff's allegation that the Sheriff retaliated against her by not responding

to her request to transfer to the Communications Division does not survive the prima facie stage.

Besides her other general circumstantial evidence, Bertram presents no evidence suggesting that her

-20-

Case No. 1:07-cv-02460
Gwin, J.

complaints caused this failure to respond or grant her request.  She argues that typically the Sheriff's

Office hires from within first and it was unlikely that the Sheriff received Bertram's application later

than the other applicant's.  The Court views these arguments as weak when confronted with the fact

that after the male who was offered the position quit, the Sheriff offered the position to Bertram.[22]/

[Doc. 41-5 at 60.]  Thus, the Court does not find that Bertram provides enough evidence to prove

a prima facie case with regard to this claim.

     As to the other two retaliation claims, the burden now shifts to the Sheriff to offer a

legitimate, nondiscriminatory reason for his decision to terminate her and then later her commission.

As to the Plaintiff's termination, in a tape-recorded September 17, 2007 conversation, the Sheriff

expressed his reasons for needing to terminate Bertram should a training extension not be granted.

Mostly, he feared liability because the training is mandated under Ohio law:

> If something happens back there and she's been here over a year, and something
> would happen, the liability rests with me that if she made a mistake because she
> hasn't been through the academy within the time set by OPOTA.

[Doc. 41-27 at 5.]  Gregory Dann confirmed this fear when he said that if Bertram did not take the

training within the time permitted, "the county risks being non-compliant with the Ohio Minimum

Jail Standards and/or possible jail de-certification."  [Doc. 41-8.]  The Sheriff also feared that in

making this exception for Bertram, other employees would seek similar exceptions and file

grievances if those requests were denied.  [Doc. 41-27 at 6, 10.]

     Most significantly, the Sheriff offered Bertram the opportunity to have the ninety-day

---

[22]/ Bertram also offers no evidence to oppose Chief Deputy Kenneth Baca's affidavit explaining that the Medina
Sheriff's Office had already selected another applicant by the time that she applied for the position.  [Doc. 50-2 at 1-8.]

Case No. 1:07-cv-02460
Gwin, J.

extension offered above.  He said she could choose either June 18, 2006 (the date her payroll status changed to correction officer) or August 7, 2006 (the date she actually began working as a corrections officer) to be her official start date.  He clarified that if she chose the August 7, 2006 start date, she would have until November 2007 to take the required training because of the ninety-day extension.  However, knowing all this, Bertram chose the June 18, 2006 start date because of her seniority concerns, thereby giving up the extension until November 2007.  According to the Sheriff's calculations, a June 18, 2006 start date left her with a deadline of approximately mid-September, 2007, including the extension.  [Doc. 41-27 at 11.]  The Court finds that the Sheriff meets his burden, especially given the liability he faced.  *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710-11 (6th Cir. 2006) (finding that the employer is "permitted to consider its legal obligations" in making employment decisions).

The burden then returns to the Plaintiff to set forth enough evidence to present a genuine issue of material fact as to whether the Defendant's proffered reason is a pretext for retaliation.  In order to show that a defendant's given reasons are a pretext for its real rationale, a plaintiff must submit evidence that the given reason (1) had no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged behavior.  *Wexler v. Whites Fine Furniture, Inc.*, 317 F.3d 564, 594 (6th Cir. 2003).  The Sheriff concluded the September 17, 2007 meeting by saying he would wait to hear if the relevant state authorities would provide a longer extension given Bertram's preference for the June 18, 2006 start date: "If they tell me that her ninety days are up, you realize I have to make my decision?" [Doc. 41-27 at 23.]  Then the Sheriff testifies in his affidavit as follows:

On September 19, 2007, I was verbally advised by the Ohio Bureau of Adult

-22-

Case No. 1:07-cv-02460
Gwin, J.

> Detention that if her start date was June 18, 2006, she would have been required to
> begin her training by September 17, 2007.

[Doc. 39-4 at 4.]  Given the Plaintiff's refusal to agree to the Sheriff's offer for the ninety-day

extension from the August date and her failure to provide opposing evidence that the state

authorities would have provided a lengthier extension from the June start date, Bertram fails to meet

her burden of showing pretext and thus this claim fails.

As to the termination of the Plaintiff's commission, the Sheriff again says he had to terminate

the commission because Bertram failed to take the training required under state law and the Medina

Sheriff's Office's policies.  [Doc. 41-5 at 45.]  The Plaintiff does not dispute that she failed to take

the required training.  Instead, she says that the Sheriff's failure to pursue a training extension for

Bertram suggests retaliation.  The Court finds that Bertram's evidence is insufficient to suggest that

the Sheriff's stated reason for the termination was pretextual.  First, the Plaintiff herself suggests she

chose not to fulfill the training requirement through court security hours that were available to her,

thereby knowingly placing her commission at risk and implying that she would not have met the

hours requirement even if given an extension.[23]  Moreover, the Plaintiff provides no evidence of

others similarly situated who received extensions.[24]  Without more, the Court does not find

sufficient evidence that the Sheriff's termination of the Plaintiff's commission was retaliatory to

send this claim to the jury.

---

[23] The Plaintiff states in her deposition that she did not complete the required hours in the court security position "because I felt that the agency already had cost me a lot, and I didn't want to put in -- give them two free days of my time when I'm trying to find a job and trying to reevaluate what's going on in this new season."  [Doc. 41-9 at 127.]

[24] In addition, the letter that the Plaintiff presents indicates a drawback to the Sheriff applying for an extension: "Extensions granted to complete overdue update training disqualifies the agency for continuing professional training reimbursement per Ohio Administrative Code 109:2-18-04."  [Doc. 41-40.]

Case No. 1:07-cv-02460
Gwin, J.

### D.  Family and Medical Leave Act

In her complaint, Bertram says that: 1) the Defendants gave her poor evaluations related to her medical-related absences in violation of the FMLA and 2) the Defendants failed to properly account for her FMLA leave when calculating her probationary period.[25/]  [Doc. 22-1 at 20.]  In her motion for summary judgment, the Plaintiff only makes the former argument. [Doc. 46-1 at 28.]

The Sixth Circuit has held that there are two possible theories of recovery under the FMLA: the interference theory under 29 U.S.C. § 2615(a)(1) and the retaliation theory under 29 U.S.C. § 2615(a)(2).  Wysong v. Dow Chem. Co., 503 F.3d 441, 446 (6th Cir. 2007) (citing Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006)).  In this case, Plaintiff Bertram likely seeks to recover from the Defendants for their alleged interference with her FMLA rights.  To establish a claim for interference with rights under the FMLA, the Plaintiff must establish by a preponderance of the evidence that (1) she is an eligible employee, (2) the Defendants are employers subject to the FMLA, (3) the Plaintiff was entitled to FMLA leave, (4) the Plaintiff gave the Defendants notice of her intention to take FMLA leave, and (5) the Defendants denied the Plaintiff's FMLA benefits or "somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations." Wysong, 503 F.3d at 447 (citing Bradley v. Mary Rutan Hosp. Assoc., 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004)).  In this case, the parties contest the fifth element.

The Department of Labor has established that employers "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c).  Similarly, the Sixth Circuit has explained, "If an employer takes an

---

[25/] The Plaintiff's allegation involving unfair treatment as to her modified work assignments was couched in sex discrimination language; therefore, the Court considers that claim in its sex discrimination analysis above.

Case No. 1:07-cv-02460
Gwin, J.

employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong,* 503 F.3d at 447.

The Court first considers the Plaintiff's contention that the Defendants' alleged poor evaluation of Bertram based on her FMLA-related absence violated the FMLA.[26/] [Doc. 41-2 at 34.] [Doc. 41-5 at 94-96.]   The Plaintiff provides no argument or evidence that this alleged poor evaluation resulted in any harm to her.[27/]  Even assuming the alleged impropriety of referring to her FMLA-related absences negatively, the Sixth Circuit has said:

> Even when an employee proves that his employer violated § 2615, § 2617 provides no relief unless the employee has been prejudiced by the violation.

*See* *Cavin v. Honda of Am. Mfg.,* 346 F.3d 713, 726 (6th Cir.2003) (quoting *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89-90 (2002)).  Thus, without a showing of prejudice, this claim

---

[26/] The Defendants claim that these evaluations were not poor and that they specifically mentioned the FMLA to preclude the improper use of the report of her weak attendance.  Lieutenant Baker testifies, "Those evaluations do note that her attendance needs to be improved.  However, during this time, her reviews note that she was on FMLA or Modified Work Assignment; as such, those comments did not negatively impact her evaluations." [Doc. 39-5 at 3.] The Court notes that the Plaintiff failed to provide these evaluations in the record; however, in their reply, the Defendants provide one example.  [Doc. 50-2 at 15.]

[27/] Recall that the parties present no argument that Bertram's termination related to her attendance or punctuality; rather, it is Bertram's failure to take the state-mandated training that is at issue regarding her termination.

Case No. 1:07-cv-02460
Gwin, J.

fails.[28][29]

The Court next turns to the Plaintiff's claim that the Defendants improperly considered Bertram's FMLA leave when deciding when her probation period expired.   The regulations accompanying the FMLA provide:

> On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.

29 C.F.R. § 825.214(a).  The Act provides that none of its restoration provisions "shall be construed to entitle any restored employee to (A) the accrual of any seniority or employment benefits during any period of leave; or (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3).  Thus, to the extent Bertram argues that her leave should not have extended her probation period by the amount of leave taken, the Court disagrees.[30]  *See Caskey v.*

---

[28] If the Plaintiff made this argument under a retaliation theory, she would fail for the same reason: she does not allege an adverse employment action tied to this allegation, an essential element of a retaliation claim.  *See Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).  *See also Smith v. ACO, Inc.*, 368 F.Supp.2d 721, 732, fn. 2. (E.D. Mich. 2005) ("To constitute an adverse employment action, an act must result in a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some actual and unfavorable change in job status.") (quoting *Birone v. Indian River Sch.*, 145 F.3d 1329, 1998 WL 199791, at *4 (6th Cir.1998)).

[29] Moreover, the Plaintiff provides no evidence tying any of the Defendants to these alleged performance reviews.  Rather, according to the deposition testimony, a supervisor, Sgt. Ensor, who is not named as a defendant, is the one who allegedly improperly referred to Bertram's FMLA absences as problematic.  [Doc. 41-5 at 94-96.]

[30] The Plaintiff also suggests that the Defendants miscalculated her total leave (FMLA and otherwise) as it affected the termination of her probation period.  During her discussion of this point in her brief, Bertram does not mention a FMLA violation, but rather a violation of her collective bargaining agreement: "Baker failed to properly follow the CBA," and "She was entitled to numerous rights under the Collective Bargaining Agreement, none of which were provided to her." [Doc. 46-1 at 17-18.] Without any indication from the Plaintiffs that they intend to make this argument on FMLA grounds nor any briefing on how this argument implicates the FMLA, the Court will confine this argument to the place the Plaintiff places it--an alleged breach of the CBA.
Moreover, the Court finds that this alleged miscalculation does not turn on whether the alleged miscalculated
(continued...)

-26-

Case No. 1:07-cv-02460
Gwin, J.

*Colgate-Palmolive Company*, 438 F.Supp.2d 954, 969 (S.D. Ind. 2006) ("The FMLA does not require an employer to cut short an otherwise justified probationary period simply because an employee has taken FMLA-protected leave.") (citing *Sawyer v. Ball Corp.*, 151 F.3d 1030 (4th Cir.1998)).[31/]

### E. State Law Claims

Having already dismissed the federal claims against the Defendants, this Court declines to exercise supplemental jurisdiction over the remaining state law claims. District courts may decline to exercise supplemental jurisdiction if "the court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Sixth Circuit has instructed that "if the federal claims are dismissed before trial, . . . the state claims generally should be dismissed as well." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997) (*quoting Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992). Thus, under § 1367(c)(3), the Court declines to exercise supplemental jurisdiction and dismisses the Plaintiffs' remaining state law claims without prejudice.

### IV. Conclusion

In conclusion, the Court **GRANTS** the Defendants' motion for summary judgment and dismisses the Plaintiffs' federal claims with prejudice and remaining state law claims without

---

[30/](...continued)
leave was FMLA-protected or not, another reason that this argument does not trigger FMLA protection in this case.

[31/] *But see Schmauch v. Honda of America Mfg., Inc.*, 295 F.Supp.2d 823, 829-33 (S.D. Ohio 2003) (plaintiff presented issue of fact as to whether extension of disciplinary period for taking FMLA leave discouraged such leave in violation of 29 C.F.R. § 825.220).

Case No. 1:07-cv-02460
Gwin, J.

prejudice.

IT IS SO ORDERED.


Dated: April 9, 2008                          s/          *James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE